FILED
CLERK, U.S. DISTRICT COURT

6/17/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: ___MMC___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2025 Grand Jury

| UNITED STATES OF AMERICA, | CR 2:25-CR-00489-FMO |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 371: Conspiracy to Solicit, Receive, Pay, and Offer Illegal Remuneration for Referrals to Clinical Treatment Facilities; 18 U.S.C. § 220(a)(1), (2): Illegal Remunerations for Referrals to Clinical Treatment Facilities; 18 U.S.C. § 982: Criminal Forfeiture] |
| TERRY PATTON, | |
| Defendant. | |

The Grand Jury Charges:

COUNT ONE

[18 U.S.C. § 371]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment,

1. Defendant TERRY PATTON was a resident of San Bernardino County, California.

2. Defendant PATTON owned and operated True Help LLC ("True Help"), located in San Bernardino County, which he formed in or around June 2019. True Help was a company that referred patients to

clinical treatment facilities specializing in substance abuse treatment throughout Orange County, California (the "Facilities") in exchange for illegal kickbacks and bribes.

3. Defendant PATTON controlled a bank account in the name of True Help at JPMorgan Chase Bank (the "True Help Bank Account") that was opened in San Bernardino County. Owner 1 was a co-conspirator who was also a co-owner of True Help and signatory on the True Help Bank Account.

4. Prior to owning True Help, defendant PATTON worked for Lake Arrowhead Recovery Center, which was a clinical treatment facility specializing in substance abuse treatment, located in San Bernardino County.

5. Broker 1 was a co-conspirator and "patient recruiter" (also referred to as a "body broker") located outside of California, who referred patients to True Help to receive substance abuse treatment services at the Facilities in exchange for illegal kickbacks and bribes.

6. The Facilities included Facility 1, Facility 2, and Facility 3, which were all located in Orange County. Owner 1 resided in Orange County and controlled Facilities 1 and 2. Owner 2 was a co-conspirator who controlled Facility 3.

7. Each of the Facilities was a "clinical treatment facility," as defined in Title 18, United States Code, Section 220(e)(2), and was regulated under state and federal law. The Facilities serviced patient populations that received health care benefits through, among other entities, Anthem Blue Cross Blue Shield, Aetna, and Cigna Behavioral Health, Inc. (collectively, the "private insurance companies"). The private insurance companies were each a "health

2

care benefit program," as defined in Title 18, United States Code, Section 24(b), and Title 18, United States Code, Section 220(e)(3).

8.   Under the terms of insurance policies and consistent with state and federal law, the private insurance companies only paid claims for services that: (a) were medically necessary and actually rendered; (b) were provided by a properly licensed service provider; and (c) complied with the terms of the health care plans, including the obligation to pay co-insurance and deductibles.

9.   Defendant PATTON was aware of the Eliminating Kickbacks in Recovery Act ("EKRA"), which took effect in October 2018 and prohibited the referring of patients to clinical treatment facilities, in connection with reimbursable medical treatment, in exchange for remuneration (also referred to as "patient brokering").

B.   OBJECTS OF THE CONSPIRACY

10.   Beginning no later than in or around June 2019, and continuing to at least in or around July 2022, in Orange County, within the Central District of California, and elsewhere, defendant PATTON knowingly conspired with Broker 1, Owner 1, Owner 2, and others known and unknown to the Grand Jury, to commit the following offenses against the United States:

   a.   Soliciting and Receiving Illegal Remuneration for Referrals to Clinical Treatment Facilities, in violation of Title 18, United States Code, Section 220(a)(1); and

   b.   Paying and Offering Illegal Remuneration for Referrals to Clinical Treatment Facilities, in violation of Title 18, United States Code, Section 220(a)(2).

C. <u>MANNER AND MEANS OF THE CONSPIRACY</u>

11. The objects of the conspiracy were carried out, and to be carried out, in substance, as follows:

<u>Defendant PATTON Pays and Offers Illegal Kickbacks to Body Brokers in Exchange for Patient Referrals</u>

a. Defendant PATTON would offer and pay illegal kickbacks and bribes to body brokers, including Broker 1, in exchange for the referral of substance abuse treatment patients to True Help.

b. In order to obtain patients for defendant PATTON, body brokers, including Broker 1, would pay a portion of the illegal kickbacks and bribes they received from defendant PATTON to the patients in order to illegally induce the patients to attend and remain in the Facilities.

c. Defendant PATTON would meet with body brokers, including Broker 1, and negotiate a monthly fee to be paid by defendant PATTON in exchange for the broker's referral of a set number of patients per month to True Help.

d. To conceal the illegal nature of the kickback and bribe payments, defendant PATTON, on behalf of True Help, Broker 1, and other brokers, would enter into sham contracts and agreements, including a contract for purported "marketing services" that memorialized this monthly fee, but as defendant PATTON well knew, purposefully failed to memorialize their unwritten agreement that the monthly fees, in fact, represented illegal kickbacks and bribes in exchange for the broker referring a certain number of patients per month.

e. Defendant PATTON and others would conceal and disguise the scheme by having the sham contract state that it prohibited

4

payments based on the "volume or value" of the broker's patient referrals. However, in fact, as defendant PATTON and the brokers knew, True Help's monthly payments to the broker were in exchange for a certain number of patient referrals to True Help each month, and thus represented illegal kickbacks and bribes in exchange for patient referrals and to induce patient referrals.

   f. Defendant PATTON would pay thousands of dollars in kickbacks and bribes to Broker 1 and other brokers on a monthly basis, in exchange for the brokers' patient referrals to True Help and to induce the brokers to continue to refer patients to True Help.

   g. Defendant PATTON would review the number of patients Broker 1 referred to True Help over the prior month and assess the kickback amount owed to Broker 1 depending on whether Broker 1 met the agreed upon monthly patient quota. To determine whether Broker 1 met the agreed upon monthly patient quota, defendant PATTON and Broker 1 assigned patients numerical values (often referred to as "units" or fractions thereof) based on the patients' type of insurance, type of treatment, and length of stay. Defendant PATTON would then adjust his fixed monthly payment to Broker 1 based on whether the prior month overstated or understated the kickback amount that defendant PATTON actually owed to Broker 1.

<u>Defendant PATTON Solicits and Receives Illegal Kickbacks from the Facilities in Exchange for Patient Referrals</u>

   h. Defendant PATTON, on behalf of True Help, would solicit and receive illegal kickbacks and bribes from the Facilities in exchange for True Help's referral of these recruited patients from the body brokers to the Facilities.

    i. Defendant PATTON would agree with representatives of the Facilities, including Owner 1, Owner 2, and others, that defendant PATTON would refer substance abuse treatment patients to the Facilities in exchange for illegal kickbacks and bribes.

    j. Defendant PATTON, on behalf of True Help, and the Facilities would negotiate a monthly fee to be paid by the Facilities to defendant PATTON, through True Help, in exchange for the referral of a set number of patients each month to the Facilities.

    k. To conceal the illegal nature of the kickback and bribe payments, defendant PATTON, on behalf of True Help, would enter into sham contracts and agreements with the Facilities that memorialized these monthly fees, but as defendant PATTON well knew, purposefully failed to memorialize their unwritten agreements that the monthly fees in fact represented illegal kickbacks and bribes in exchange for a certain number of patient referrals.

    l. Defendant PATTON and others would conceal and disguise the scheme by having the sham contract state that they prohibited payments based on the "volume or value" of any patients, when the Facilities' monthly payments to True Help were actually in exchange for True Help referring a certain number of patients to the Facilities each month, and thus represented illegal kickbacks and bribes in exchange for patient referrals and to induce patient referrals.

    m. Defendant PATTON would refer patients that True Help obtained from Broker 1 and other brokers to the Facilities in exchange for illegal kickbacks and bribes.

    n. To determine whether True Help met its monthly patient quota to the Facilities, defendant PATTON and the Facilities would

assign patients numerical values (often referred to as "units" or fractions thereof) based on the patients' type of insurance, type of treatment, and length of stay.

    o.   The Facilities would pay defendant PATTON, through True Help, illegal kickbacks and bribes in the form of checks payable to True Help and wire transfers into the True Help Bank Account. The kickbacks and bribes from the Facilities would often contain memo lines such as "Marketing" or "MKTG."

    p.   The Facilities would bill and subsequently be reimbursed by the insurance companies for drug treatment purportedly given to patients referred to the Facilities by True Help.

    12.   In total, defendant PATTON knowingly and willfully paid at least approximately $454,355 in illegal kickbacks and bribes to Broker 1 in exchange for Broker 1 referring patients to True Help for purported substance abuse treatment services covered by the patients' private insurance plans.

    13.   During the conspiracy, the Facilities paid defendant PATTON, through True Help, at least approximately $2,312,150 in illegal kickbacks and bribes for patients defendant PATTON referred to the Facilities.

    14.   In total during the conspiracy, defendant PATTON paid and received at least approximately $2,766,505 in illegal kickbacks and bribes for patient referrals.

D.   <u>OVERT ACTS</u>

    15.   On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendant PATTON, Broker 1, Owner 1, Owner 2, and others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt

acts, among others, within the Central District of California, and elsewhere:

Overt Act No. 1:  On September 2, 2020, defendant PATTON, on behalf of True Help, entered into a purported "Contract Admissions & Marketing Services Agreement" with Owner 2, on behalf of Facility 3, which required monthly payments of $13,000 from Facility 3 to True Help and included a provision that purportedly prohibited these payments from being based on the "volume or value" of any referrals provided by defendant PATTON through True Help.

Overt Act No. 2:  On September 22, 2020, defendant PATTON, on behalf of True Help, received a $6,500 kickback from Facility 3 in exchange for the referral of patients for substance abuse treatment, in the form of a wire transfer into the True Help Bank Account containing the memo line "Marketing."

Overt Act No. 3:  On January 7, 2021, defendant PATTON, on behalf of True Help, received a $19,500 kickback from Owner 1 in exchange for the referral of patients for substance abuse treatment to Facility 1, in the form of a check that was deposited into the True Help Bank Account.

Overt Act No.4:  On March 5, 2021, defendant PATTON paid an illegal kickback and bribe in the form of a $5,000 wire transfer from the True Help Bank Account to Broker 1 in exchange for Broker 1's referral of patients to True Help.

Overt Act No. 5:  On March 16, 2021, defendant PATTON, on behalf of True Help, received a $3,250 illegal kickback from Owner 1 in exchange for the referral of patients for substance abuse treatment to Facility 2, in the form of a check that was deposited into the True Help Bank Account.

COUNTS TWO THROUGH FOUR

[18 U.S.C. §§ 220(a)(1), 2]

16. The Grand Jury realleges paragraphs 1 through 9 and 11 through 14 of this Indictment here.

17. On or about the dates set forth below, in Orange and San Bernardino Counties, within the Central District of California, and elsewhere, defendant PATTON, together with others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and willfully solicited and received remuneration, namely, the following payments, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring a patient and patronage to a recovery home and clinical treatment facility, each with respect to services covered by a health care benefit program, in and affecting interstate commerce:

| COUNT | DATE | PAYMENT | APPROXIMATE AMOUNT |
|---|---|---|---|
| TWO | 1/7/2021 | Check from Facility 1 payable to True Help | $19,500 |
| THREE | 3/16/2021 | Check from Facility 2 payable to True Help | $3,250 |
| FOUR | 8/20/2021 | Check from Facility 1 payable to True Help | $9,000 |

COUNTS FIVE THROUGH SEVEN

[18 U.S.C. §§ 220(a)(2), 2]

18. The Grand Jury realleges paragraphs 1 through 9 and 11 through 14 of this Indictment here.

19. On or about the dates set forth below, in Orange and San Bernardino Counties, within the Central District of California, and elsewhere, defendant PATTON, together with others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and willfully paid and offered remuneration, namely, the following payments, directly and indirectly, overtly and covertly, in cash and in kind, to induce a referral of an individual to a recovery home and clinical treatment facility, and in exchange for an individual using the services of a recovery home and clinical treatment facility, each with respect to services covered by a health care benefit program, in and affecting interstate commerce:

| COUNT | DATE | PAYMENT | APPROXIMATE AMOUNT |
|---|---|---|---|
| FIVE | 1/4/2021 | Wire transfer from the True Help Bank Account to Broker 1 | $7,000 |
| SIX | 3/5/2021 | Wire transfer from the True Help Bank Account to Broker 1 | $5,000 |
| SEVEN | 4/1/2021 | Wire transfer from the True Help Bank Account to Broker 1 | $10,000 |

FORFEITURE ALLEGATION

[18 U.S.C. § 982(a)(7)]

1.  Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(7), in the event of the defendant's conviction of any of the offenses set forth in any of Counts One through Seven of this Indictment.

2.  The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)  All right, title, and interest in any and all property, real or personal, constituting, or derived directly or indirectly from, the gross proceeds traceable to the offenses; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

_/S/_____
Foreperson

BILAL A. ESSAYLI
United States Attorney

*Christina Shay*
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division

KRISTEN A. WILLIAMS
Assistant United States Attorney
Chief, Major Frauds Section

ROGER A. HSIEH
Assistant United States Attorney
Deputy Chief, Major Frauds Section

LORINDA LARYEA
Acting Chief, Fraud Section
U.S. Department of Justice

NIALL M. O'DONNELL
Assistant Chief, Fraud Section
U.S. Department of Justice

SIOBHAN M. NAMAZI
Trial Attorney, Fraud Section
U.S. Department of Justice